May it please the Court, my name is Paula Brunner and I'm representing the Equal Employment Opportunity Commission in this appeal today. The action underlying this appeal was a simple request for an enforcement of a subpoena that would enable the EEOC to investigate a national origin discrimination complaint. This complaint simply alleged that a specific Hispanic individual by the name of Elmer Escalante had been subjected to different terms and conditions of employment, and that in addition to a class of Hispanic workers had been subjected to disparate treatment, hostile work environment conditions, and retaliation when they were terminated following their complaint in violation of Title VII. The defendant, Maritime, initially provided some of the subpoena information that we requested about Mr. Escalante and its general employment practices. However, when Mr. Escalante... You're not seeking at this point, as I understand it, to get into the viability of a cause of action or to what remedies might lie or whatever. I mean, as I understand your position, those things lie down the road. That is correct, Your Honor. We are seeking, in this subpoena enforcement action, we are seeking information to determine whether a possible violation of Title VII occurred. And so Maritime's concerns about Mr. Escalante's... The merits of that are not before us. Exactly. Because the merits itself has not even been determined. A lawsuit hasn't even been filed. A liability determination hasn't been made. And the commission itself has not decided whether there's a viable claim here. So right now, there's so much that is premature in terms of the concerns articulated by Maritime concerning Mr. Escalante's documented status or his ability to recover relief. Does there have to be some quality of the nature of the charge to tether you to an investigation? In other words, Congress wanted you to have a complaint before you do this. They didn't want the agencies just going out and investigating. This is correct, Your Honor, under Title VII. Yeah, right. So the question is, does the charge have to meet some level of credibility to justify your action? Could you have a totally spurious claim from somebody in South America who sends a charge and it doesn't even work here, but has a gripe against IBM? Could you use that charge to go in and investigate IBM? Your Honor, it's unlikely we would. Our resources are... Well, I understand you would. I'm just trying to define this tether that Congress... That the complaint is one involving a basis, a protected trait that we consider protected under our law. That being national origin and specifically discriminatory action allegedly being taken against Hispanics. That falls within the purview of our authority. And when we receive concerns of this nature by a person who is, in this case, stating they were employed by... You're not quite getting to my point. In other words, is there any kind of a charge that you could... A complaint that you could receive that would not trigger your right to investigate? Yes, Your Honor. And how do you define that from... I understand your point that the charge is not before you, the merits are not before you. We're not testing that at this point. You're conducting an investigation. But the question I have is the restriction on agency power that Congress put in there. So, Your Honor, if we were to receive a charge that spoke to overtime hours or wages and pension benefits or safety measures in the workplace, that might be something we would defer to labor, to OSHA,  This is one that's speaking directly to concerns occurring in the workplace that involves the treatment of employees by their employer. So if you got a letter from a relative in Mexico who wrote you a letter and said, I have a cousin who works for a company in America. The person happens to be 15 years old and is getting paid half, as I understand it, of what he should. Would that justify your investigation? Not immediately, Your Honor. The Title VII doesn't allow for a person or someone on behalf of a person aggrieved to file a charge. So in your particular scenario, the person, despite the fact that they might be in another country, if they're filing on behalf of an employee, an American employee or an employee working for an American company, and stating that they're getting paid less. But in this particular case, it would have to be more than paid less. Paid less would be labor. Paid less because of their national origin, their race, their gender, their color, religion, would be EEOC. My hypothetical would be my cousin up there is 15 years old and is paid half because she's Hispanic. That would fall within the purview of the commission to investigate, Your Honor. To investigate that even though there would be, it might not be justifiable? I'm not sure why it would be unjustifiable. Is it, you think, because the person's 15? Because we do protect teenagers that are eligible to work. Okay. Yes. So that would not disqualify them. The main point that I think all of you are grasping and I appreciate is that this is a subpoena enforcement proceeding that is allowing us to simply investigate and try to determine whether or not there is any basis or veracity or validity to this charge that was filed by Mr. Escalante. Even once we render a determination, it is not one that's binding. It would require a lawsuit that could be filed by the commission or by Mr. Escalante to go into court to seek some final determination on liability. And any concern about remedies would be premature because that goes to damages. The Hoffman case from the Supreme Court would seem to indicate remedies are restricted in these kinds of, in what might eventuate as a lawsuit. You're saying that it's possible we have a lawsuit. We don't know. The definition of Title VII of an employee under Title VII is fairly broad. It's someone employed by an employer. And there may be national origin discrimination and that might come within our purview. We just don't know at this point. That is correct, Your Honor. And we won't know until we get the information that we've requested from the employer to assist us. For all we know, we could end up exonerating this employer. Let me ask you this. Why would the information and how would the information requested from the employer assist you? Tell me how it works. The type of information we requested from the employer in the subpoena was one pertaining to his wage records, his personnel records, employment records, and also those of any person that worked during the same period of time as he in order to make the contracts so that we could see how this particular employer was treating its employees. If, in fact, we were to find a pattern of negative action directed to the protected group, the Hispanic group of this charging party, we would then suspect that there was discrimination occurring in the issue of reasonable cause determination in the case. At that point, it would be then considered by the commission as to whether it wanted to file a lawsuit or whether we would just simply be issuing a right to sue notice to the charging party. Because I understand Hoffman said the fact that some remedies were restricted, didn't, brought by non-citizens, lawsuits brought by non-citizens, it didn't mean that all kinds of non-monetary relief was out of the question. That is correct, Your Honor. And even more importantly, Hoffman was speaking to the National Labor Relations Act and the ability of the board to award relief. But it does have some bearing on what might eventually occur. We believe it has some bearing to the extent that the employee definition under the National Labor Relations Act is as broad as the definition under Title VII. And so with respect to any concern regarding coverage of undocumented workers, we believe that Hoffman completely addresses the question that undocumented workers are covered by federal labor and anti-discrimination laws. Then taking the step further with respect to relief, the board's ability to award relief. I'm not really certain why there would be a, why under Title VII, monetary relief would be available, whereas those same remedies, monetary relief is unavailable under the National Labor Relations Act. A lot of times we try to harmonize these things, these statutes and interpret them consistently. This is true, Your Honor. Since 1981, however, under Title VII, we also have monetary relief in the form of compensatory and punitive damages, which could also be available to Mr. Escalante and the other affected individuals if a liability determination was found. In the particular case of Hoffman, those kind of matters were not before the Supreme Court. The Supreme Court's issue was addressing whether or not the board could award back pay for work not performed. It is the commission's position we can afford, that relief would be pursued for undocumented workers who were discriminated against during their work period time for work performed. But if Oash hired only undocumented workers, would you have power to issue an injunction against that? Absolutely, Your Honor. We believe that the court has the power to issue. Under the statute, you would have, in other words, if it was conclusively established that the employer only had undocumented workers. You say you would have jurisdiction, you would have power to investigate that and issue an injunction. Yes, Your Honor. We would have power to investigate that to determine whether or not that was the actual case. You find the undocumented workers are being treated discriminatorily. Would you be able to issue an injunction to cure that? Not the commission, Your Honor. We don't have that type of authority like the National Labor Relations Board. The court could issue an injunction once a lawsuit was filed. And unlike the national… On what basis? I mean, in other words, I'm trying to get to the undocumented issue, the district court, undocumented worker issue. Okay, so with that regard, okay, let's understand. First, the undocumented status of the charging party is not really relevant to whether or not we can investigate the charges filed. We have an obligation mandated by Congress to investigate complaints of national origin discrimination. If, in fact, there was a lawsuit filed, whether by us or Mr. Escalante, and the issue of undocumented worker type of relief awarded, an injunction could be awarded because, unlike the National Labor Relations Board, which is only authorized to interpret the National Labor Relations Act, the courts are allowed to interpret any of the statutes that's before them. In this particular case, reconciling the interest of Title VII to ferret out employment discrimination from the workplace and the Immigration Reform and Control Act desire… Are we getting a little bit ahead of ourselves? Absolutely, Your Honor, because at this point, we don't even know whether or not there's a basis for a lawsuit. That's what we're trying to determine, and that's why the undocumented status of the charging party is irrelevant. The statute allows for any person who is agreed by an employment practice of an employer to file a charge, and following the charge, which triggers the commission's obligation under the statute to investigate to determine whether there's any validity to the complaints at issue. If, in fact, taking a step from your particular hypothetical, Judge Nehemiah, is that there could be Hispanic workers there that are not undocumented, and the allegations in the charge… In other words, in that case, I suppose your position would be we're looking at the workplace, and we don't know the remedy at this point, but the potential remedy is still there. Absolutely, Your Honor. That's your position on that. That is absolutely correct, and that there are people who are entitled, whether undocumented or documented, to be able to bring to our attention potential violations of the law, because Congress intended for enforcement to start with the private actor. We, as the agency to enforce these laws, are obligated to conduct an investigation to determine whether what has been brought to our attention is legitimate. I will reserve the rest of my time for rebuttal unless there are further questions. She answered Paul's question. Pardon? She answered Paul's question. Okay. The purpose of the subpoena is to tell whether there are undocumented workers and there are documented workers, and the documented workers would have many more remedies than the undocumented. Is that right? The purpose of the subpoena would not be to determine undocumented versus documented. It would be to determine whether or not there's a possible violation of Title VII. But the possible violation of Title VII could affect both undocumented and documented workers… Absolutely. …depending upon what you find after your subpoena. That is absolutely correct, Your Honor. May I reserve the rest of my time for rebuttal? Sure. Thank you. Thank you. Mr. Vanderwood? Good morning. Thank you. John Vanderwood on behalf of Maritime. There's a jurisdictional requirement that a valid charge of discrimination be filed. The Supreme Court has said that in the Shell Oil case. This Court has said that in the Randstad case. And in order for the EEOC to begin an investigation, there needs to be a valid charge of discrimination. They don't have the authority to simply say, we have a complaint here… The Shell case does use the word valid charge of discrimination, Your Honor. And is there any definition or explanation of what a valid charge is? It isn't specifically defined in that case, but the courts have looked at whether, and when they've done looking at these subpoena cases, as to whether the charge itself was valid. And in this case, this is the equivalent of me walking into the EEOC and telling them, I don't work at this employer, I don't have anyone that I'm representing that works at this employer, but I think they're discriminating against, pick a category since this is a Hispanic case, we'll say Hispanics. And I'm going to file a charge, not on behalf of anybody who is an employee there, but I'm just simply filing it because I think they're discriminating. And under the EEOC's theory of their own authority, they can then just go and ask that employer to provide all sorts of documents and information, harass the employer to provide any number of employee files. In this case, I think we had hundreds. Wouldn't that be a question of burdensomeness? There seem to be two questions. Number one, the underlying authority of the EEOC to investigate it all. And number two, the question of whether the subpoena is ideally burdensome. And you can challenge the subpoena on grounds of burdensomeness in court as well. And I agree with that, Your Honor. But this is really the question is, what comes first? And what comes first under the statute and what comes first under the Supreme Court case is there must be a valid charge of discrimination. Well, yeah, I understand that. But given the definition of employer and employee in Title VII, and it's fairly broad. I mean, it says an employee is someone employed by an employer. And then given the fact that it covers national origin discrimination, that's a prohibited ground under Title VII. That doesn't indicate to me that there is a cause of action here. I just don't know. But what the agency is contending here is not implausible, to borrow a word from Twombly and Iqbal and apply it to another context. It doesn't seem to me that what they are looking is plainly beyond their purview. I agree with you, though, and I think in agreement with Judge Niemeyer's earlier question that there are some outer limits. I mean, if the EEOC were going to investigate safety in the making of cheeses or in the manufacture of widgets and they were going to investigate safety, then could they subpoena? No, we can't have agencies going around and subpoenaing parties on subjects that have nothing to do with their charge. But what I'm saying to you is this doesn't really seem to be one of those cases that's plainly beyond what Congress wanted the EEOC to do. You take a case like Hoffman and it says the fact that monetary relief is not available under the NLRA, but they were careful in that case not to foreclose the fact that there may be some other kinds of relief available, as I understand it, even to non-citizens of a non-monetary nature. So this isn't a question of a rogue agency or something where the agency has just run off the tracks or gone wild, is it? I would suggest, Your Honor, that that's exactly what's going on here. And I think the Supreme Court basically said that the reason that there's a requirement for a valid charge is that the EEOC, unlike some other agencies, they said when they passed this statute, Congress had a, and I am quoting, desire to prevent the EEOC from exercising unconstrained investigative authority. Well, this is more the question then that underpins your argument, which is, is this a valid charge? This is an undocumented Hispanic who claims discrimination in the workplace. And is that a valid charge? And if you say it's not valid, what's the ground? The grounds for that is that this Court in the, now all of a sudden the Egbuna case has specifically determined that. Is there any other authority you have other than that one? Has the Supreme Court addressed whether undocumented worker can file a complaint under Title VII? The Supreme Court has not addressed that issue. However, they did in the case that was just referred to, the Hoffman case, specifically agreed that an undocumented worker does not have any right to back pay for any work based on the fact that he was an undocumented worker and he was not an employee and as a result was not allowed to recover back pay, which is I think the basis for the reasoning in the Egbuna case too is that with the. Can a worker like that get an injunction to prohibit discrimination in the future? I don't believe that a worker like that can get an injunction against an employer because I believe in the Egbuna case this Court recognized that under the, based upon the immigration statutes that have now been passed, he is not lawfully, he's disqualified as an employee. And as a result, it keeps going back to the beginning. You have to be a valid complainant to make a charge under the EEOC. This Court recognized in the Egbuna case that an undocumented worker is not a valid plaintiff under the EEOC and granted summary judgment. There are no other circuits, I don't believe, that have addressed that. Egbuna is what we would have to rely on to conclude that this charge was invalid. Well, it's not just Egbuna, it's the basis for Egbuna was the new statute that basically said that illegal aliens are not lawful workers in the United States. Is there another dimension to this that's troubling? Do you earn yourself an exemption from investigation by violating the law and hiring illegal aliens or undocumented aliens? Do you thereby just have a blanket exemption from any kind of investigation by breaking the law and hiring an undocumented alien? No matter how badly you treat them or how much discrimination there is, you say, well, no problem, we can't be investigated. And it just seems to me that at a certain point you're attempting to capitalize on illegal actions to claim an exemption from legal process. And the paradox of that is a bit troubling to me. I'd be happy to address that. I don't believe there's any disqualification from investigation whatsoever. In fact, I think the statute itself that is supposed to have that investigation is what started this thing to begin with, was under the immigration statute, they have the authority, the ICE people have the authority to come in and investigate. And in fact, if you have undocumented workers, you can be criminally charged, you can be criminally fined, you can be civilly charged. So there's a whole group of people who are authorized to come in and investigate this kind of situation. It's just not the EEOC. That's not their prerogative. That's not their mission. They're not supposed to be. Well, that may be correct, but is the question clear enough at this stage that we can quash a subpoena? I mean, is that question so clear at this point in time that we can quash the subpoena? Or is this a question of sufficient unto the day? And your question, you might be right in some or all aspects of it. The only question I have is whether this whole merits issue should await another day in time when perhaps we will have more information than we do now. And again, I can conceive of very burdensome requests where they're trying to sort of turn your company inside out with a request for records and the imposition is really an undue one. But I think that's separate. As I look at this, we're just dealing with this very preliminary step. The problem is that we're starting with an invalid complainant. And in listening to the responses, their theory is we can start with an invalid charging party. We can then do an investigation. Maybe we'll find some valid charging parties, other people, banks who are being discriminated against who are legally there, and then we can impose remedies for that. The problem is that Mr. Escalante has no remedies under Title VII. What do you base that on? I believe the Igbuna case. No, Igbuna limited the remedies. Igbuna was not employed at the time, and Mr. Escalante was employed in this case. So we're looking at work performed as opposed to the Igbuna case. I believe Igbuna addressed the fact that he can't be paid, he can't be reinstated, there can't be injunctions. But there were some remedies left open in the Igbuna case that he could have, right? I'm not aware of any. They granted a summary judgment because of the fact that he was an undocumented worker. And he was applying for a job, and his claim was that he was discriminated against and not being rehired, right? Correct, but he was also asking for all sorts of remedies under Title VII, back pay, front pay. But he wasn't asking for back pay because of the way he was treated while he was employed. I know it started with him being on a request for reinstatement. He was going to go to Nigeria and he came back and he replied for reinstatement and said we're not going to hire you. That's correct. He wasn't suing over any treatment that he had while he was employed. I would agree with that. As opposed to Mr. Escalante who was suing over treatment while he was employed. Correct, but I think also in the Hoffman case they determined that back pay can't be awarded. But the Hoffman case left some remedies available to undocumented aliens, right? Well, I believe in the Hoffman case there were four or five people and it was an unfair labor practice charge where they had done some things not only as to the unlawful person but to others as well. And the only real issue in Hoffman was whether the undocumented person could get back pay as part of the remedy. There were other remedies available. Well, there were also other plaintiffs in the case is the way I read that case. It wasn't just Mr. Hoffman. I think Judge Norton raised a good point in this sense. If we cut this off at this stage, aren't we making a rather emphatic and absolute pronouncement at the very beginning of something without having really fleshed it out on the merits or having any briefing on the merits or whatever, that no matter how egregious the discrimination against the Hispanic employee is, there's no remedy of any kind and you can't even look into it. Now, you know, that may be true in whole or in part. I just don't know. I'd like to hear a briefing on the subject in a more thorough discussion of Hoffman and think about it for a good long while. But what you're asking us to do is right at the very outset of this, make this unqualified statement that no matter how rank and egregious the discrimination on the basis of national origin is against these individuals, there's nothing we can do about it. You can't look into it. You know, carte blanche. It's just too soon to say something that absolute. It's too soon. What I'm asking the court to do and what I believe is the correct interpretation of the statute is to require the EEOC to have a valid charging party before they begin an investigation. But it puts the cart before the horse. How do they know whether they have a valid charge unless we? I would respond that what we're doing, if we do it the other way, is putting the cart before the horse because there's admissions by Mr. Escalante and the EEOC that this gentleman is an undocumented illegal alien. So it's not like there's any investigation that needs to be done to determine whether there's a valid charging party. So the cart before the horse would be allowing an investigation even though there's not a valid charging party. Here, to put the horse in front of the cart, you need a charging party, according to the statute, before the EEOC has the right to then come and invade an employer and start beginning investigating. There are, as I indicated, there's other statutes, there's other agencies to investigate the employment of illegal aliens and whether employers should be penalized for that. But that's not what the EEOC is charged with. It's a jurisdictional argument, which I believe should be done at the beginning, not later on after the EEOC has run through the employer and attempted to get every piece of information they can, and then maybe they'll find a different charging party. If, in fact, we grant the subpoena, then you can talk to the district judge and say this is overbroad, burdensome, and it costs a lot of money. But you still have the ability to remedy that, right? Well, that issue, yes. But we don't have the issue to remedy that a person who's not a valid charging party can simply walk into the EEOC and cause any employer that they want to. I could do it. Everybody else can do it if I'm not a valid charging party. All I do is go file and charge. A lot of this, though, is a product of statutes that Congress has passed, and they charge the agency with this particular mission. Whereas that may or may not, the extent of the delegation of authority of the commission may be something about which people can legitimately argue, but as a matter of law, I don't see how this is so conclusively beyond the EEOC's authority that we can just quash a subpoena at the very outset of this. It just seems to me, you know, a question of ripeness or prematurity or that this isn't ripe or that it's premature or something. But, you know, we have to give some credence to what Congress did want the EEOC to do. And your case raises serious questions, but those questions, and I don't mean to say that it doesn't raise serious questions. It raises very serious questions. But the whole thing might moot out. I mean, they might decide, look, there's not enough here to bring the lawsuit, or they have to be very careful about what kind of lawsuit they bring to test these propositions because this is an uncharted area and there are lots of arguments that can be raised on both sides. And they may not say this is not the test case we want, this is not the vehicle we want. But it's all a matter of timing, just timing. I would simply address that by stating that this isn't referred to as sort of the summary judgment standard. There aren't facts in dispute here as to whether this person is a qualified charging party. He's admitted it. He's admitted he's not. The EEOC has admitted he's not. And that's why this isn't, and I understand you're saying it's early in the game, and it is early in the game, but this is one of those situations early in the game where the EEOC has gone beyond its authority. Well, maybe so, maybe not. But there hasn't even been a merits determination below. There's no 12B6 dismissal on the merits. There's no summary judgment below. I mean, we normally review judgment orders on the part of district court. There's none of that here. And I understand that. And it's still at the EEOC, which is why if this ever gets out of the EEOC, we will be fined. In fact, I've written letters to the EEOC requesting that they dismiss this charge as well as others because they've admitted that they're undocumented aliens and they have no remedies under Title VII. And those letters have gone ignored or unresponded to. But there will be a summary judgment at some point if this continues on. But this is a situation I believe requires there to be a valid charging party before the EEOC investigates. And I see my time is up. I think we do understand your argument and also appreciate it. Thank you. I appreciate it. Ms. Bruner, you have some rebuttal time. Your Honors, the commission has never taken the position that Mr. Escalante is not a valid charging party, as we indicated this statute itself. Do you disagree with Agbuna? We do disagree with Agbuna in terms of deciding that Mr. Escalante isn't a I'm talking about Agbuna. The decision in Agbuna, was that wrongly decided? We believe that there are components of Agbuna that is wrongly decided. Agbuna makes the statement that an employer of an illegal alien is not an employer under Title VII. Yes, we understand that. However, the distinction between Agbuna and this case, Mr. Agbuna was a former employee who had had a visa working for The facts don't matter because the reasoning was, whatever the context would come up under the facts, the reasoning was that the Congress made it illegal to hire illegal aliens, and the court concluded that, therefore, a person who hired an illegal alien was not an employer. And in order to have jurisdiction under Title VII, you have to be an employer. And Michelle did say this is a jurisdictional argument. Okay, Your Honor, Agbuna is incorrect with respect to its interpretation of sure-tan, which was that undocumented workers were not covered under the National Labor Relations Action, which it did not state. But Hoffman made even clearer and reaffirmed that sure-tan, and Hoffman itself, stood for the proposition that undocumented workers are covered under the federal laws. Therefore, Mr. Escalante, as a covered worker, undocumented or otherwise, is. Is it the commission's position that undocumented aliens are covered by the EEOs? Title VII. Title VII. Correct, and the National Labor Relations Act. I want to stick right with these. Okay, yes, under Title VII, undocumented workers are covered. Are covered, and they can bring a claim under Title VII? Absolutely, Your Honor. As I stated, Title VII indicates that any person who is aggrieved by the employment practices of an employer may file a charge. That provision does not speak to immigration status. It does not speak to the person's ability to obtain relief. It talked about an employer. You have to have an employer, too. Well, we absolutely have an employer with Mr. Maritime. Well, an employer under Agbuna is not one who hired an illegal alien. No, Your Honor, I don't recall Agbuna making any kind of statement to that effect. I think it was speaking to the qualifications of the employee, not the employer. But most importantly, Maritime is an employer under Title VII because it has 15 or more employees. Agbuna said, therefore, his former employer could not have violated Title VII by refusing to rehire him. And they cited the Immigration Reform and Control Act of 1986. Yes, Your Honor, because that employer was stating it was not violating Title VII because that employer refused to – What he violated says he wasn't an employer under the – couldn't be an employer under Title VII. Because under Agbuna, that employer would have been directly violating the law of IRCA to hire Mr. Agbuna who had an expired visa. That is not the case here. We're talking about, in Agbuna, an employee trying to obtain employment without proper documentation. That's the rationale, but that isn't the narrow holding of Agbuna. Agbuna goes on the notion it's a definitional reasoning. The reasoning is – The definition being – An employer is not subject to Title VII when he hires a disqualified illegal alien. That was the reasoning. Now, however it's applied to the remedy is something else. And you also may disagree with it, which is legitimate, and you may think it's wrong. But I don't think you can narrow that case down to what you want to say, that it covers certain aspects of employment but not others. Your Honor, for the purposes of a subpoena and any defenses that may arise on the merits of any action that may ultimately be brought in this case, this court in Washington Suburbans has stated that not enforcing – that with respect to a subpoena enforcement proceeding, because the commission is not bringing a suit against the employer for statutory violations, but instead is merely attempting to investigate possible unlawful discrimination at the company. Your jurisdiction is clearly broader, but Congress was very, very intent on cabining the EEOC. They did not want to have that broad jurisdiction unlinked to a valid charge. And we have a valid charge. And the Supreme Court went on to say that this is jurisdictional. In other words, you don't even have jurisdiction unless you have a valid charge. And to establish jurisdiction in a subpoena enforcement proceeding, all you need to do is make a plausible claim, which we have done. We have established a plausible basis for jurisdiction, which is we are investigating a claim of national origin discrimination. Do you agree that the charge was filed by an undocumented, illegal alien? I agree that the charge was filed by a person aggrieved by the employment practices of Maritime who happens to be an undocumented worker. Okay, thank you. If I may, as I stated, any defense regarding Mr. Escalante is premature at this point. That is something that is acknowledged by every circuit that has addressed this, in addition to the Fourth Circuit. The question is, if you have on the face of the proceedings right now, you know this man is undocumented, you know that it's illegal to hire an undocumented thing, and under Agbuna, the employer who hires it is not an employer. The question is, is that as a matter of law a valid charge under Title VII? It is a valid charge as a matter of law, Your Honor. Why don't you refer it, like you said, you refer things to the NLRB. Why don't you refer it to Homeland Security? Your Honor, the commission is who Congress has invested with the authority to investigate allegations of employment discrimination, not another agency other than Department of Justice. This falls within our purview because this is a private sector employer. The other thing is that one must, I think, appreciate that courts can, that there may be competing interests here with respect to what IRCA wants to achieve and what the commission is obligated to do in accordance with its mission to ferret out workplace discrimination. What we have here is an employer that knowingly hired undocumented workers, encouraged undocumented workers to procure false documents, and provided the funding for those false documents. You read the parade of horribles. There's no question about it. It is hard facts, and it violates the law. The question in this case is whether the EEOC is the commission to take care of this. And we are maintaining, as we have all along, that the commission is. Okay. Thank you for your time.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, David C. Norton